IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Bucksport Water System, Inc., | ) | Civil Action No.: 4:13-cv-02503-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **FINDINGS OF FACT AND** |
| Weaver Engineering, Inc.; Robert L. | ) | **CONCLUSIONS OF LAW** |
| Weaver; the United States of America; | ) | **GRANTING PRELIMINARY** |
| and the South Carolina Department of | ) | **INJUNCTION IN PART** |
| Revenue, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Bucksport Water System, Inc. ("Bucksport") filed an Interpleader Complaint on September 13, 2013, seeking to pay sums currently due and that may become due to Defendant Weaver Engineering, Inc. and/or Robert L. Weaver ("Weaver") into the registry of the Court because of the competing claims made by Defendant Internal Revenue Service of the United States of America ("the United States")[1] and the South Carolina Department of Revenue ("DOR"). This

---

[1] As the United States correctly notes and to which it consents, the IRS is not a suable entity and the United States should be substituted as the proper party; the Court therefore substitutes the United States as the proper party defendant as reflected in the caption of this case. *See, e.g.*, *Reppert v. I.R.S.*, 418 F. App'x 897, 898 n. 1 (11th Cir. 2011) ("[T]he IRS is not a suable entity."); *Castleberry v. Alcohol, Tobacco and Firearms Div. of Treas. Dept.*, 530 F.2d 672, 673 (5th Cir. 1976) ("[T]he U.S. Treasury Department . . . is not suable, since the Congress has not constituted the Treasury Department or any of its divisions or bureaus as a body corporate and has not authorized either or any of them to be sued eo nomine."); *Spagnolo v. U.S. I.R.S.*, No. 12–00255, 2012 WL 6629559, at 1 n.1 (D. Hawai'i Dec, 18, 2012) (substituting the United States for the IRS in a federal tax lien case); *Devries v. I.R.S.*, 359 F. Supp. 2d 988, 991–92 (E.D. Cal. 2005) (substituting the United States for the IRS in a federal tax lien case). Subject to the limitations regarding future funds discussed herein, the United States acknowledges that this Court has jurisdiction over it and consents to that jurisdiction. *See* 28 U.S.C. § 2410(a)(5) (generally permitting an interpleader action involving "real or personal property on which the United States has or claims a mortgage or other lien").

matter is before the Court pursuant to Bucksport Water System, Inc.'s ("Bucksport's") Motion for Temporary Restraining Order and Preliminary Injunction ("Motion for Preliminary Injunction"),[2] filed three days after the Interpleader Complaint. Bucksport seeks a Preliminary injunction to restrain the United States and DOR from the following:

(1) Seizing, confiscating, or in any other manner forcibly taking funds held by Bucksport and owed to Weaver; or

(2) taking any other action which might interfere with this Court's determination of Bucksport's interpleader action.

[*See* Mot. for Prelim. Inj., Doc. # 6, at 1.]

Having carefully considered the arguments of the parties and their respective filings, the Court grants Bucksport's Motion for a Preliminary Injunction in part as set forth in the Findings of Fact and Conclusions of Law below. To the extent that any Findings of Fact constitute Conclusions of Law, or vice-versa, they shall be so regarded.

### **Findings of Fact**

Bucksport is a non-profit organization that provides rural water services in Horry County, South Carolina. Bucksport engaged Weaver to perform preliminary engineering studies and design work for a planned expansion of its rural water services in exchange for payment.

For work performed under the parties' agreement, Bucksport currently owes Weaver $49,260.00. Bucksport may also owe Weaver Engineering additional funds for work that is ongoing and will continue in accordance with the parties' agreement.

As an employer, Weaver is required to timely report and pay over applicable state or federal

---

[2] As discussed herein, the Court has already issued a TRO and, as it approaches expiration, is now issuing a Preliminary Injunction. Thus, Bucksport's request for a TRO is now moot and the Court will refer to Bucksport's request as a Motion for Preliminary Injunction.

taxes. According to the United States, Weaver currently owes approximately $865,000 in unpaid employment and unemployment taxes, penalties and interest assessed by a delegate of the Secretary of the Treasury. Weaver was also required to pay employer withholding taxes to the State of South Carolina, which according to DOR it failed to do. DOR, in accordance with South Carolina law, issued an assessment for said delinquent taxes, thereby creating an official tax liability to be collected using DOR's collections procedures. According to its notice of levy, Weaver owes well over $100,000 to the State of South Carolina.

In an effort to collect the taxes Weaver owed to the State of South Carolina, in June 2011 DOR issued and served a levy on Bucksport requiring Bucksport to redirect any monies otherwise payable to Weaver to DOR for application against Weaver's tax debt. Bucksport did not immediately pay these funds because, as it argued at the hearing in this matter, Weaver had not yet billed for its services so Bucksport did not know how much to pay to Weaver (and thus how much to redirect to DOR).[3] According to Bucksport, it did not receive an invoice from Weaver until February 2013.

In August 2012 and January 2013, and before Bucksport alleges it receive an invoice from Weaver, the United States served Bucksport with a levy of its own also requiring Bucksport to remit any funds owed to Weaver. Bucksport claims it did not remit any funds because it had also received DOR's June 2011 levy.

On June 27, 2013, the United States sent Bucksport a letter explaining why the United States was entitled to priority over DOR. The United States ultimately issued a final demand for payment.

---

[3] DOR argues in its briefings that sometime before initiating the present interpleader action, Bucksport paid approximately $77,000 to Weaver in two payments. DOR concedes it is not certain whether this amount was paid to Weaver before receipt of DOR's levy.

3

In September 2013, DOR sent Bucksport a letter disagreeing with the United States and threatening to seize the funds regardless of any action taken or any position by the state and federal governments. The United States and DOR vehemently disagree about ownership of the funds owed from Bucksport to Weaver. DOR argues that its levy was filed first and that, unlike the United States' levy, a levy from DOR is continuing levy and operates as a seizure of property belonging to the recipient of the process. DOR further argues and alleges that Bucksport colluded with Weaver to frustrate and delay DOR's collection efforts. Additionally, as a result of what DOR claims is a failure by Bucksport to honor its levy, DOR has assessed penalties against Bucksport personally. DOR claims that Bucksport, by allegedly failing to honor DOR's "seizure" of the funds at issue, now has a separate and distinct debt for which it is personally liable. According to DOR, this personal debt is thus separate and apart from DOR's levy on the funds owed to Weaver.

Faced with these purported competing claims and the threat of multiple liabilities, Bucksport filed this Interpleader Complaint so that this Court could decide who has priority to the $49,260, as well as any remaining funds that come due under the contract between Bucksport and Weaver. Because DOR threatened to seize Bucksport's property even after it filed the interpleader action, on September 16, 2013, Bucksport filed the Motion for Preliminary Injunction at issue and requested a Temporary Restraining Order ("TRO") without notice.

On September 17, 2013, the Court issued a TRO. Pursuant to Federal Rule of Civil Procedure 65, the Court held a hearing on September 27, 2013, to determine whether the Court should issue a preliminary injunction. All parties presented arguments at the hearing and the Court received filings from all parties addressing their respective arguments. Pursuant to Rule 65(b)(2) and without objection from any party, the Court extended the TRO through October 11, 2013, so that all parties

could submit proposed orders and file responses to Bucksport's Motion, and so that the Court could consider the parties' arguments.

The United States consents to an order enjoining it from seizing the $49,260 owed to Weaver, as well as any additional funds owed up to October 11, 2013, the date of this Order. The United States opposes any further relief arguing that the Court lacks jurisdiction to enjoin the United States' collection of any future amounts owed Weaver. DOR fully opposes Bucksport's Motion, arguing that the Court lacks jurisdiction to enjoin it from collecting on its levy.

As explained more fully below, the Court finds that Bucksport has made the required showing entitling it, in part, to its requested preliminary injunction.

## **Conclusions of Law**

### **I.    Applicable Law**

#### A.    Interpleader Actions

Federal Rule of Civil Procedure 22 expressly provides that interpleader is appropriate when a plaintiff may be "expose[d] to double or multiple liability." Fed. R. Civ. P. 22(a)(1). Interpleader is "a procedural device that allows a disinterested stakeholder to bring a single action joining two or more adverse claimants to a single fund." *Coastal Rehab. Serv., P.A. v. Cooper*, 255 F. Supp. 2d 556, 558 (D.S.C. 2003) (internal citations omitted). It is "an equitable remedy designed to protect the stakeholder from multiple, inconsistent judgments and to relieve it of the obligation of determining which claimant is entitled to the fund." *Id*.

#### B.    Preliminary Injunction Standard

Federal Rule of Civil Procedure 65 gives the Court, upon motion of a party and with notice to the adverse party, the power to issue a preliminary injunction.

A preliminary injunction is an extraordinary remedy that will be issued only upon a showing by a plaintiff of four requirements: "(1) that [it] is likely to succeed on the merits, (2) that [it] is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in [its] favor, and (4) that an injunction is in the public interest." *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 130 S.Ct. 2371 (2010) (citing *Winter v. NRDC, Inc*., 129 S. Ct. 365, 374 (2008) and redefining the Fourth Circuit's previous preliminary injunction standard articulated in *Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir. 1977)). The ultimate goal of a preliminary injunction is to maintain the status quo pending an adjudication on the merits of the case.

If a preliminary injunction motion is granted, the order granting it must "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail – and not by referring to the complaint or any other document – the act or acts restrained or required." Fed. R. Civ. P. 65(d).

**II.     Bucksport Entitled to Preliminary Injunction in Part**

Bucksport is entitled to relief because it has demonstrated the requirements for a preliminary injunction as detailed below.

A.     Bucksport is Likely to Succeed on the Merits.

Bucksport demonstrates a substantial likelihood that it will succeed on the merits of its interpleader action. The purpose of interpleader is to protect a party from multiple, inconsistent liabilities. Determining whether Bucksport is likely to succeed on the merits, then, does not involve a determination of whose levy is superior; it involves a determination of whether Bucksport has shown it is exposed to multiple obligations regarding the same funds. Bucksport has plainly done

6

so here.

Both the United States and DOR have demanded that Bucksport turn over the same funds: any money Bucksport owes to Weaver, particularly the $49,260.00 Bucksport owes Weaver as a result of the February 2013 invoice. The United States agrees that interpleader is appropriate as to any money owed by Bucksport to Weaver as of the date of this Order. [*See* United States Resp., Doc. # 16, at 5–7.] DOR itself acknowledges that both the United States and DOR have sought the same money from Bucksport. [*See* DOR Resp., Doc. # 25, at 3–5.] Much of DOR's argument regarding the money Bucksport owes to Weaver focuses on why the DOR levy has already technically seized the funds sought by the United States. This itself highlights the appropriateness of interpleader here.

DOR also argues that this Court lacks jurisdiction to enjoin it from seizing funds from Bucksport that are owed to Weaver. In support of its argument, DOR points to the Tax Injunction Act at 28 U.S.C. § 1341, which states that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." According to DOR, any injunction would restrain DOR from collecting taxes owed by Bucksport, who can attack the levy under the Revenue Procedures Act in South Carolina state court. *See* S.C. Code Ann. § 12-60-10 to -3390 (Supp. 2012). The Court rejects DOR's arguments.

The cases relied on by DOR do not involve interpleader actions. The Tax Injunction Act does not bar federal courts from issuing injunctive relief in interpleader actions involving federal tax levies. *See, e.g.,* 28 U.S.C. § 2361 ("In any civil action of interpleader . . . , a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation

involved in the interpleader action until further order of the court. . . . Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.").

The Supreme Court has specifically ruled that "federal courts must guard against interpretations of the Tax Injunction Act which might defeat its purpose and text." *Arkansas v. Farm Credit Serv. of Cent. Arkansas*, 520 U.S. 821, 827 (1997). A district court in the Western District of Pennsylvania addressed this issue as follows:

> In any civil action of interpleader . . ., a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court. . . . Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment. . . . Moreover, if [a federal court could never stop a state tax collection agency from seizing funds subject to an interpleader action,] it would mean that no interpleader action could ever be brought if one of the claimants was a tax collecting agency. Yet the Supreme Court, in the exercise of its original jurisdiction, has taken cognizance of the conflicting tax claims of different States in what is in substance an interpleader action. *Texas v. Florida*, 306 U.S. 398, 405-412 (1939).

*Consol. Coal Co. v. Bailey*, 330 F.Supp. 474, 478–79 (W.D. Penn. 1971); *see also Layton v. United States*, 650 F. Supp. 334, 336 (E.D. Va. 1986) (quashing an IRS levy in interpleader action in spite of 26 U.S.C. § 7421(a), which similarly prohibits attempts to enjoin the IRS's collection and assessment efforts, by holding that "taking the IRS's position to its logical conclusion, an interpleader court could never resolve a contested issue against the IRS"); *Matter of Novotny's Estate*, 446 F.Supp. 1027, 1030 (S.D.N.Y 1978) ("[I]t is clear that the federal district court can exercise jurisdiction over a case in which the application of a state tax statute is contested where the United States is a party."); *State Tax Comm'n v. Union Carbide Corp.*, 386 F.Supp. 250, 254 (D. Idaho 1974) ("A federal court may . . . entertain an action otherwise within § 1341 if to do so would

prevent a multiplicity of suits." (citing *Matthews v. Rodgers*, 284 U.S. 521 (1932))).

Thus, Bucksport has shown a substantial likelihood that its interpleader action will succeed in that Bucksport has shown it is exposed to multiple obligations regarding the money owed by Bucksport to Weaver as of the date of this Order.[4]

However, the Court denies Bucksport's Motion to the extent it seeks to either enjoin future collection efforts beyond the money owed to Weaver as of the date of this Order, or to enjoin the United States or DOR from proceeding against Bucksport for its potential personal liability.

### 1.     Future Collection Efforts

The Court agrees with the United States that it is inappropriate to issue blanket preliminary injunction enjoining either the United States or DOR from collecting funds owed to Weaver in the future. The authority cited above provides an exception to the jurisdictional bar against enjoining state and federal tax collection efforts by authorizing a court to enjoin tax agencies from collecting *specific funds* that are the subject of an interpleader action. Without some identifiable funds in dispute, there could be serious jurisdictional issues regarding the Court's ability to issue an injunction – even in an interpleader action. *See Coastal Rehab. Serv.,* 255 F. Supp. 2d at 560 (holding that plaintiff failed to establish jurisdiction in interpleader action because the United States "never claimed to have 'a mortgage or other lien' on" the funds allegedly at issue).

Additionally, because any future funds are speculative, any dispute over their disposition is

---

[4] The Court also notes that the instant interpleader action is not specifically a suit to enjoin, suspend or restrain the assessment, levy or collection of a tax under state law. Bucksport does not make any claim to the funds it owes Weaver, nor does Bucksport contest the merits of DOR's and the United States' respective claims to the money. Indeed, Bucksport has made clear that it simply wants to make payment to the proper entity. In that sense, should DOR's claim to the funds prove valid, the interpleader action will actually serve to assist the State of South Carolina in its collection of the taxes owed by Weaver.

9

equally speculative. At a minimum, given the speculation surrounding the funds owed to Weaver in the future, for purposes of issuing a preliminary injunction Bucksport has failed to show a substantial likelihood that it is exposed to multiple obligations regarding the future funds owed.

### 2. Bucksport's Personal Tax Liability to United States or DOR

The Court also will not enjoin the United States or DOR from proceeding against any potential monies owed by Bucksport personally that are not at issue in this action.[5] As discussed thoroughly above, Bucksport shows a likelihood of success on the merits because there is a dispute as to who is entitled to the following specific funds: the money Bucksport owes Weaver as of the date of this Order. While Bucksport may dispute the validity of DOR's personal debt against it, that does not create a valid interpleader claim and the Court lacks the authority to otherwise enjoin DOR or the United States from proceeding with their tax collection efforts. *See* 28 U.S.C. § 1341 (prohibiting a district court from enjoining a state's collection and assessment efforts); 26 U.S.C. § 7421(a) (prohibiting a district court from enjoining the IRS's collection and assessment efforts). Bucksport's remedy regarding the alleged debt to DOR, which is separate from the levied funds owed to Weaver, rests with South Carolina's Revenue Procedures Act. *See Lawyer v. Hilton Head Public Serv. Dist. No. 1*, 220 F.3d 298, 305 (4th Cir 2000) (noting that South Carolina's Revenue Procedures Act provides a remedy for South Carolina taxpayers).

### B. Bucksport Shows the Remaining Preliminary Injunction Factors

In addition to showing a likelihood of success on the merits as discussed above, Bucksport also shows that it is likely to suffer irreparable harm in the absence of preliminary relief, that the

---

[5] By logical extension, the Court will not enjoin the United States or DOR from proceeding against, collecting or assessing any pending monies owed by Bucksport to a party other than Weaver.

balance of equities tips in its favor, and that an injunction is in the public interest. *See Real Truth About Obama*, 575 at 346.

Bucksport can show likelihood of irreparable harm. The purpose of the present interpleader suit is to allow Bucksport to avoid multiple liabilities or obligations regarding the money it owes to Weaver and that is subject to tax levies by both DOR and the United States. The preliminary injunction will preserve the status quo until this Court can determine to whom the funds belong. In the absence of the requested preliminary injunction, both DOR and the United States have the legal authority to seize the disputed funds. In fact, DOR, through its counsel, indicated its intention to seize the funds when confronted with the possibility of this interpleader action.

The balance of equities tips in Bucksport's favor and an injunction is in the public interest. As to the balance of equities, as discussed above, Bucksport will suffer irreparable harm in the absence of the requested preliminary injunction. At the same time, the issuance of the preliminary injunction and eventual adjudication of this interpleader action by the Court will actually benefit DOR and the United States by aiding in the collection of taxes. As to the public interest, both state and federal governmental entities are parties to this case. Further, proper administration of the laws – including tax laws – is in the public interest.

### C. Bond is Set at Zero Dollars

The Court finds that a bond amount of zero dollars is appropriate in this case. This Court has previously discussed the requirements of bond as follows:

> In fixing the amount of an injunction bond, the district court should be guided by the purpose underlying Rule 65(c), which is to provide a mechanism for reimbursing an enjoined party for harm it suffers as a result of an improvidently issued injunction or restraining order. The amount of the bond, then, ordinarily depends on the gravity of the potential harm to the enjoined party: "[T]he judge usually will fix security in an amount that covers the potential incidental and consequential costs as well as either

> the losses the unjustly enjoined . . . party will suffer during the period he is prohibited from engaging in certain activities or the complainant's unjust enrichment caused by his adversary being improperly enjoined or restrained."

*Pulliam v. Clark*, No. 4:11–cv–03047–RBH, 2012 WL 1835758, at *3 n.3 (D.S.C. May 21, 2012) (quoting 11A Charles Alan Wright et al., *Federal Practice and Procedure* Section 2954, at 292 (2d ed. 1995)). Where the district court determines that the risk of harm is remote, or that the circumstances otherwise warrant it, the court may fix the amount of the bond accordingly. In some circumstances, a nominal bond may suffice. *Id.*; *see also Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999) ("In some circumstances, a nominal bond may suffice."); *United Mine Workers of Am. v. A & M Trucking, Inc.*, 991 F.2d 108, 110 n.2 (4th Cir. 1993) (explaining that pursuant to Rule 65(c), a bond amount is required but it can be acceptable to set that amount at zero); *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1356 (2d Cir. 1974) (approving district court fixing bond amount at zero in the absence of evidence regarding likelihood of harm).

In this interpleader action, Bucksport will deposit with the Court the funds that both DOR and the United States seek to collect. Thus, both DOR and the United States are protected against any "damages sustained" if the Court finds they are entitled to the funds. *See* Fed. R. Civ. P. 65(c). Further, the United States consents to an injunction regarding funds currently owed to Weaver, and at the hearing on this matter counsel for DOR specifically stated that DOR would leave the issue of bond to the Court's discretion.

## Conclusion

Based on the foregoing, the Court **GRANTS** in part and **DENIES** in part Bucksport's Motion for Preliminary Injunction [Doc. # 6].

**IT IS THEREFORE ORDERED** that Defendants United States of America, South Carolina Department of Revenue, Weaver Engineering, Inc. and Robert L. Weaver are **ENJOINED** from:

(1)   Seizing, confiscating, or in any other manner forcibly taking funds held by Bucksport and owed to Weaver Engineering or Robert Weaver as of October 11, 2013, the date of this Order;[6] and

(2)   taking any other action which might interfere with this Court's determination of Bucksport's interpleader action.

This Preliminary Injunction shall remain in effect until the Court determines who should receive the funds held by Bucksport and owed to Weaver Engineering or Robert Weaver, or by further order of this Court.

In issuing this preliminary injunction, the Court does not restrict the United States or the South Carolina Department of Revenue from (i) collecting or assessing any potential monies owed personally by Bucksport not at issue in this action, (ii) collecting any monies owed by Bucksport to any other taxpayer (i.e., a customer that is not Weaver Engineering or Robert Weaver), or (iii) continuing its ongoing efforts to collect Weaver Engineering's or Robert Weaver's outstanding federal and state tax liabilities – to the extent those collection and assessment efforts do not interfere with the Court's determination as to who is entitled to the disputed funds.

Bond is set a **ZERO DOLLARS**.

**IT IS FURTHER ORDERED** that Bucksport shall file a motion within five calendar days seeking permission to deposit the funds held by Bucksport and owed to Weaver Engineering or Robert Weaver as of the date of this Order.

---

[6] The Court reiterates that, as of the date of the hearing in this matter, Bucksport currently owes Weaver $49,260.00.

**IT IS SO ORDERED.**

                                                 s/ R. Bryan Harwell
                                                 R. Bryan Harwell
                                                 United States District Judge

Florence, South Carolina
October 11, 2013