IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Bucksport Water System, Inc., | ) | Civil Action No.: 4:13-cv-02503-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Weaver Engineering, Inc.; Robert L. Weaver; the United States of America; and the South Carolina Department of Revenue, | ) ) ) ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

This lawsuit arises from Plaintiff Bucksport Water System, Inc.'s ("Bucksport's") Interpleader Complaint, filed on September 13, 2013, seeking to pay sums currently due and that may become due to Defendant Weaver Engineering, Inc. and/or Robert L. Weaver ("Weaver") into the registry of the Court because of the competing claims made by Defendant the United States of America ("the United States") and Defendant the South Carolina Department of Revenue ("DOR"). Currently pending before the Court are DOR's Motion to Dismiss and Bucksport's Motion to Deposit Funds. For the reasons discussed herein, the Court grants in part and denies in part DOR's Motion to Dismiss and grants in part and denies in part Bucksport's Motion to Deposit Funds.[1]

**Factual and Procedural Background**

Bucksport is a non-profit organization that provides rural water services in Horry County, South Carolina. Bucksport engaged Weaver to perform preliminary engineering studies and design work for a planned expansion of its rural water services in exchange for payment.

---

[1] Under Local Rule 7.08, "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." The issues have been briefed by the parties, and the Court believes a hearing is not necessary.

For work performed under the parties' agreement, Bucksport currently owes Weaver $49,260.00. Bucksport may also owe Weaver Engineering additional funds for work that is ongoing and will continue in accordance with the parties' agreement.

As an employer, Weaver is required to timely report and pay over applicable state or federal taxes. According to the United States, Weaver currently owes approximately $865,000 in unpaid employment and unemployment taxes, penalties and interest assessed by a delegate of the Secretary of the Treasury. Weaver was also required to pay employer withholding taxes to the State of South Carolina, which according to DOR it failed to do. DOR, in accordance with South Carolina law, issued an assessment for said delinquent taxes, thereby creating an official tax liability to be collected using DOR's collections procedures. According to its notice of levy, Weaver owes well over $100,000 to the State of South Carolina.

In an effort to collect the taxes Weaver owed to the State of South Carolina, in June 2011 DOR issued and served a levy on Bucksport requiring Bucksport to redirect any monies otherwise payable to Weaver to DOR for application against Weaver's tax debt. Bucksport did not immediately pay these funds because, as it argued at the hearing in this matter, Weaver had not yet billed for its services so Bucksport did not know how much to pay to Weaver (and thus how much to redirect to DOR).[2] According to Bucksport, it did not receive an invoice from Weaver until February 2013.

In August 2012 and January 2013, and before Bucksport alleges it receive an invoice from Weaver, the United States served Bucksport with a levy of its own also requiring Bucksport to remit

---

[2] DOR argues in its briefings that sometime before initiating the present interpleader action, Bucksport paid approximately $77,000 to Weaver in two payments. DOR concedes it is not certain whether this amount was paid to Weaver before receipt of DOR's levy.

2

any funds owed to Weaver. Bucksport claims it did not remit any funds because it had also received DOR's June 2011 levy.

On June 27, 2013, the United States sent Bucksport a letter explaining why the United States was entitled to priority over DOR. The United States ultimately issued a final demand for payment. In September 2013, DOR sent Bucksport a letter disagreeing with the United States and threatening to seize the funds regardless of any action taken or any position by the state and federal governments. The United States and DOR vehemently disagree about ownership of the funds owed from Bucksport to Weaver. DOR argues that its levy was filed first and that, unlike the United States' levy, a levy from DOR is continuing levy and operates as a seizure of property belonging to the recipient of the process. DOR further argues and alleges that Bucksport colluded with Weaver to frustrate and delay DOR's collection efforts. Additionally, as a result of what DOR claims is a failure by Bucksport to honor its levy, DOR has assessed penalties against Bucksport personally. DOR claims that Bucksport, by allegedly failing to honor DOR's "seizure" of the funds at issue, now has a separate and distinct debt for which it is personally liable. According to DOR, this personal debt is thus separate and apart from DOR's levy on the funds owed to Weaver.

Faced with these purported competing claims and the threat of multiple liabilities, Bucksport filed this Interpleader Complaint so that this Court could decide who has priority to the $49,260, as well as any remaining funds that come due under the contract between Bucksport and Weaver. Because DOR threatened to seize Bucksport's property even after it filed the interpleader action, on September 16, 2013, Bucksport filed the a motion for preliminary injunction at issue and requested a temporary restraining order ("TRO") without notice. DOR, in leu of an answer, subsequently filed the Motion to Dismiss at issue alleging among other grounds that the Court lacked jurisdiction.

On September 17, 2013, the Court issued a TRO. On October 11, 2013, after a hearing on the matter, the Court issued a preliminary injunction restraining Weaver, DOR and the United States from the following:

(1) Seizing, confiscating, or in any other manner forcibly taking funds held by Bucksport and owed to Weaver Engineering or Robert Weaver as of October 11, 2013; and

(2) taking any other action which might interfere with this Court's determination of Bucksport's interpleader action.

The Court also required Bucksport to file a motion seeking permission to deposit the funds held by Bucksport. On October 16, 2013, Bucksport filed the Motion to Deposit Funds at issue. However, in addition to seeking to deposit the $49,260.00 at issue, Bucksport also raised other request for relief.

## Discussion

### I. DOR's Motion to Dismiss

DOR filed its Motion to Dismiss alleging lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6). As discussed below, the Court grants in part and denies in part DOR's Motion.[3]

---

[3] DOR alleged in its Motion that because Bucksport failed to properly serve it, dismissal was appropriate because the Court lacks personal jurisdiction under Rule 12(b)(1) and there was insufficient service of process under 12(b)(5). However, while Bucksport initially failed to properly serve DOR, it has since properly served DOR. *See* Fed. R. Civ. P. 4(m) (affording a plaintiff one-hundred and twenty days to serve a defendant). The Court notes that DOR Chief Counsel, Milton G. Kimpson, who has appeared before the Court in this action, formally accepted service on behalf of DOR. [*See* Acc. Of Service, Doc. # 40-1.] Thus, the issues raised with regard to Rules 12(b)(2) and 12(b)(5) are moot and the Court denies DOR's Motion to Dismiss on those grounds.

A.     Standard of Review

Motions brought pursuant to Rule 12(b)(1) challenge whether the district court has jurisdiction over the action. Fed. R. Civ. P. 12(b)(1). A court may dismiss a case for lack of subject matter jurisdiction on any of the following bases: " '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.' " *Norman v. Owens*, No. 5:12–cv–01158–RBH, 2013 WL 4042038, at *3 (D.S.C. Aug. 7, 2013) (quoting *Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008)). Generally, challenges to jurisdiction under Rule 12(b)(1) may be raised in one of two ways: as a facial attack or as a factual attack. *See Thigpen v. United States*, 800 F.2d 393, 401 n. 15 (4th Cir. 1986), *overruled on other grounds* by *Sheridan v. United States*, 487 U.S. 392 (1988). A facial attack questions whether the allegations in the complaint are sufficient to sustain the court's jurisdiction; a court analyzes a facial attack as it would a motion to dismiss under Rule 12(b)(6) such that "[t]he allegations in the complaint are taken as true, and materials outside the pleadings are not considered." *Id.* A factual attack challenges the truthfulness of the jurisdictional allegations in the complaint, *id*., and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment," *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. *Id*.; *Trentacosta v. Frontier Pac. Aircraft Indus*., 813 F.2d 1553, 1559 (9th Cir. 1987). A dismissal should only be granted in those

instances in which "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg*, 945 F.2d at 768 (citing *Trentacosta*, 813 F.2d at 1558).

DOR also moved to dismiss under Rule 12(b)(6) "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, the Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8(a) does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Igbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555. In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Igbal*, 556 U.S. at 678.

B.     Analysis

DOR argues that the Tax Injunction Act at 28 U.S.C. § 1341 deprives this Court of subject matter jurisdiction. The Act states that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. According to DOR, the interpleader action improperly prohibits DOR from collecting taxes owed by Bucksport, who can attack the levies against it under the Revenue Procedures Act in South Carolina state court. *See* S.C. Code Ann. § 12-60-10 to -3390 (Supp. 2012). The Court rejects DOR's arguments.

The cases relied on by DOR do not involve interpleader actions. The Tax Injunction Act does not bar federal courts from issuing injunctive relief in interpleader actions involving *federal* tax levies. *See, e.g.,* 28 U.S.C. § 2361 ("In any civil action of interpleader . . . , a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court. . . . Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.").

The Supreme Court has specifically ruled that "federal courts must guard against interpretations of the Tax Injunction Act which might defeat its purpose and text." *Arkansas v. Farm Credit Serv. of Cent. Arkansas*, 520 U.S. 821, 827 (1997). A district court in the Western District of Pennsylvania addressed this issue as follows:

> In any civil action of interpleader . . ., a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court. . . . Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment. . . . Moreover, if [a federal court could never stop a state tax collection agency from seizing funds subject to an interpleader action,] it would mean that no interpleader action could ever be brought if one of the claimants was a tax collecting agency. Yet the Supreme Court, in the exercise of its original jurisdiction, has taken cognizance of the conflicting tax claims of different States in what is in substance an interpleader action. *Texas v. Florida*, 306 U.S. 398, 405-412 (1939).

*Consol. Coal Co. v. Bailey*, 330 F.Supp. 474, 478–79 (W.D. Penn. 1971); *see also Layton v. United States*, 650 F. Supp. 334, 336 (E.D. Va. 1986) (quashing an IRS levy in interpleader action in spite of 26 U.S.C. § 7421(a), which similarly prohibits attempts to enjoin the IRS's collection and assessment efforts, by holding that "taking the IRS's position to its logical conclusion, an

7

interpleader court could never resolve a contested issue against the IRS"); *Matter of Novotny's Estate*, 446 F.Supp. 1027, 1030 (S.D.N.Y 1978) ("[I]t is clear that the federal district court can exercise jurisdiction over a case in which the application of a state tax statute is contested where the United States is a party."); *State Tax Comm'n v. Union Carbide Corp*., 386 F.Supp. 250, 254 (D. Idaho 1974) ("A federal court may . . . entertain an action otherwise within § 1341 if to do so would prevent a multiplicity of suits." (citing *Matthews v. Rodgers*, 284 U.S. 521 (1932))). This Court thus has subject matter jurisdiction over Bucksport's interpleader action.[4]

In it's argument for dismissal under Rule 12(b)(6), DOR's remaining contention is essentially that there is no dispute regarding the money at issue in the interpleader action. The purpose of interpleader is to protect a party from multiple, inconsistent liabilities. Fed. R. Civ. P. 22(a)(1). The face of the Interpleader Complaint shows that Bucksport is exposed to multiple obligations regarding the same funds. Both the United States and DOR have demanded that Bucksport turn over the same funds: any money Bucksport owes to Weaver, particularly the $49,260.00 Bucksport owes Weaver for engineering services rendered. [Compl., Doc. # 1, at ¶¶ 11–18.] The Court denies DOR's Motion to Dismiss on this ground.

In both its subject matter jurisdiction and failure to state a claim arguments, DOR appears to argue that any potential monies owed by Bucksport personally to DOR should not be at issue in this action. This Court agrees. As thoroughly discussed in the Preliminary Injunction Order, while

---

[4] The Court also notes that the instant interpleader action is not specifically a suit to enjoin, suspend or restrain the assessment, levy or collection of a tax under state law. Bucksport does not make any claim to the funds it owes Weaver, nor does Bucksport contest the merits of DOR's and the United States' respective claims to the money. Indeed, Bucksport has made clear that it simply wants to make payment to the proper entity. In that sense, should DOR's claim to the funds prove valid, the interpleader action will actually serve to assist the State of South Carolina in its collection of the taxes owed by Weaver.

8

Bucksport may dispute the validity of DOR's personal debt against it, that does not create a valid interpleader claim and the Court lacks the authority to otherwise prevent DOR from proceeding with their tax collection efforts against Bucksport personally. *See* 28 U.S.C. § 1341 (prohibiting a district court from enjoining a state's collection and assessment efforts). Bucksport's remedy regarding the alleged debt to DOR, which is separate from the levied funds owed to Weaver, rests with South Carolina's Revenue Procedures Act. *See Lawyer v. Hilton Head Public Serv. Dist. No. 1*, 220 F.3d 298, 305 (4th Cir 2000) (noting that South Carolina's Revenue Procedures Act provides a remedy for South Carolina taxpayers). Therefore, to the extent Bucksport's Interpleader Complaint can be read as requesting an interpleader action regarding any potential monies owed personally by Bucksport to DOR, the Court grants in part DOR's Motion to Dismiss.

## II.     **Bucksport's Motion to Deposit Funds**

Bucksport 's Motion to Deposit Funds request the Court afford it the following relief: permit deposit of the $49,260.00 currently owed to Weaver into the registry of the Court; discharge Bucksport from any and all liability regarding the monies to be deposited with the Court and dismiss Bucksport as a party to this action; enter an injunction permanently restraining and enjoining Defendants from commencing any legal or tax enforcement action against Bucksport in the future relating to the $49,260.00 to be deposited with the Court; and award Bucksport its reasonable attorneys' fees and costs incurred in bringing and litigating this action out of the monies deposited with the Court, which according to Bucksport is approximately $22,000. While both DOR and the United States consent to Bucksport's request to deposit the $49,260.00 with the Court, they both object to the other relief requested by Bucksport and contend that Bucksport should remain a party to the action. While the Court will allow Bucksport to deposit with the Court the $49,260.00

currently owed to Weaver, as discussed more throughly herein it denies Bucksport's other requests for relief *without prejudice*.

A.    Applicable Law

Federal Rule of Civil Procedure 22 expressly provides that interpleader is appropriate when a plaintiff may be "expose[d] to double or multiple liability." Fed. R. Civ. P. 22(a)(1). Interpleader is "a procedural device that allows a disinterested stakeholder to bring a single action joining two or more adverse claimants to a single fund." *Coastal Rehab. Serv., P.A. v. Cooper*, 255 F. Supp. 2d 556, 558 (D.S.C. 2003) (internal citations omitted). It is "an equitable remedy designed to protect the stakeholder from multiple, inconsistent judgments and to relieve it of the obligation of determining which claimant is entitled to the fund." *Id*. Further, Rule 67 specifically permits a party, on notice to other parties and with leave of court, to deposit with the court a sum of money in dispute. Fed. R. Civ. P. 67.

B.    Analysis

As an initial matter, the Court notes that no party objects to allowing Bucksport to deposit the $49,260.00 it currently owes to Weaver with the Court. Indeed, as has been discussed in detail herein and in this Court's Preliminary Injunction Order, interpleader is appropriate here as Bucksport is exposed to multiple obligations regarding the same funds. *See* Fed. R. Civ. P. 22(a)(1). The Court will therefore permit Bucksport to deposit those funds with the Court in accordance with this Order.

Bucksport next asks the Court to discharge it from any and all liability regarding the monies to be deposited with the Court and to dismiss Bucksport as a party to this action. The Court declines to dismiss and discharge Bucksport at this time. First, neither DOR nor the United States have filed

answers in the current action. The United States specifically notes that it may file a counterclaim against Bucksport, while DOR has accused Bucksport of "collusion" with Weaver in frustrating DOR's tax collection efforts. [*See* United States' Resp., Doc. # 42, at 2; DOR Resp., Doc. # 41, at 6.] While it is common to dismiss an interpleader plaintiff after the funds at issue are deposited with a court, it is also possible for defendants in an interpleader case to assert claims against a plaintiff. *See, e.g.*, *Lohman v. General Am. Life Ins. Co.*, 478 F.2d 719, 721–22 (8th Cir. 1973) (discussing a case where defendant had been made party to action by interpleader and had filed counterclaim against plaintiff).Second, both DOR and the United States have stated an intention to seek discovery from Bucksport, in part, to show their entitlement to the disputed funds. [*See* United States' Resp., Doc. # 42, at 2 (also arguing that if Bucksport owes Weaver any additional funds during the pendency of this action, Bucksport could move to file an amended complaint without filing a second interpleader action); DOR Resp., Doc. # 41, at 6.] The Court will therefore deny Bucksport's request *without prejudice*.

Bucksport also seeks an order permanently enjoining Defendants from proceeding against Bucksport in the future for any action "relating to" the deposited funds. Both DOR and the United States object to this request, arguing that the Court is without jurisdiction to broaden the preliminary injunction already entered in this case. The Court agrees that, as discussed in its Preliminary Injunction Order, its authority to enjoin state and federal tax collection efforts is limited and in this case the Court may enjoin the tax agencies from collecting *specific funds* that are the subject of an interpleader action. *See* 28 U.S.C. § 1341 (prohibiting a district court from enjoining a state's collection and assessment efforts); 26 U.S.C. § 7421(a) (prohibiting a district court from enjoining the IRS's collection and assessment efforts). Plaintiff's requested permanent injunction, in addition

to its permanent nature, seeks to bar any future action "relating to" the deposited funds. This request, which is extremely broad in both temporality and scope, could arguably prohibit a future tax action against Bucksport related to any alleged collusion with Weaver or any personal liability stemming from its handling of the deposited funds. As noted by the United States, the limited previous injunction entered by this Court serves the purpose of protecting both Bucksport and the deposited funds while not running afoul of the Court's jurisdictional limitations regarding injunctions against state and federal tax agencies. The Court therefore denies Bucksport's request for a permanent injunction.

Lastly, Bucksport request an award of attorneys' fees out of the monies deposited with the Court. First, as discussed above, because Bucksport will remain in the case any discussion of attorneys' fees is premature. Second, as explained by the United States and as conceded by Bucksport itself in its briefings requesting a preliminary injunction, if the United States is "awarded priority in the funds, an award of attorneys' fees is unlikely." [Pl.'s Memo, Doc. # 15 at 11 n.1 (citing *Abex Corp. v. Ski's Enters., Inc.*, 748 F.2d 513, 516–17 (9th Cir. 1984)).] *See also Jonathan Melnick Auctioneers, Inc. v. Sauder Woodworks, Inc.*, No. 86-2527, 1987 WL 36036, at * 1 (4th Cir. Apr. 24,1987) (relying on *Abex* in holding that "[t]he district court erred in awarding attorney's fees and expenses" before a tax debt had been satisfied in full). The Court struggles to see how it could award attorneys' fees when it is still unclear whether the United States will be awarded the funds – and thus mooting a request for attorneys' fees. Third, DOR argues that attorneys' fees are inappropriate at this time because Bucksport committed bad faith and collusion. Bucksport's request

for attorneys' fees is denied *without prejudice* to Bucksport's right to raise the issue after the Court has determined who is entitled to the disputed funds.[5]

## Conclusion

The Court has thoroughly reviewed the filings made by the parties, the arguments therein and the applicable law.

**IT IS THEREFORE ORDERED** that DOR's Motion to Dismiss [Doc. # 28] is **GRANTED** in part and **DENIED** in part. Specifically, the Court **DISMISSES** any portion of Bucksport's Interpleader Complaint which seeks an interpleader action regarding any potential monies owed personally by Bucksport to DOR. All remaining grounds in DOR's Motion to Dismiss are **DENIED**.

---

[5] Courts have the authority to award within their discretion costs and attorneys' fee to a stakeholder in interpleader actions. *See, e.g.*, *BellSouth Telcomm., Inc. v. DeKalb Concrete Prods., Inc.*, No. 3:95–533–17, 1995 WL 578191, at *4 (D.S.C. July 28, 1995) (ordering the award of attorney's fees to the stakeholder in an interpleader action payable from the stake); *Murphy v. Traveler's Ins. Co.*, 534 F.2d 1155, 1164 (5th Cir.1976) ( "In fact, as a general rule, when an interpleader action is successful, the court often awards costs, as well as attorney's fees, to the stakeholder.") A Court's discretion whether to award attorneys' fees and costs in an interpleader action is guided by equitable principles and "if there is substantial controversy between the interpleading party and others, or if the stakeholder desires further protection from the court in exonerating it from possible liability, an allowance may be denied." *Ohio Nat'l Life Assurance Corp. v. Morris*, No. 1:05-2626-RBH, 2006 WL 3479030, *5 (D.S.C. Nov.30, 2006) (citing Wright and. Miller, Fed. Practice, Interpleader § 1719, pp. 677–679)). Here, while the Court is denying Bucksport's request for attorneys' fees without prejudice, it notes that it is entirely possible that a substantial controversy may exist between the interpleading party and certain Defendants. Further, the Court points out that Bucksport's attorneys' fees are quite high given the early stage of this case and the attached legal invoices are redacted and give the Court no ability to determine what work was actually performed.

**IT IS FURTHER ORDERED** that Bucksport's Motion to Deposit Funds [Doc. # 36] is GRANTED in part and DENIED in part. Specifically, Bucksport's request to deposit funds is granted as follows:

1. On or before November 4, 2013, Plaintiff will deposit with the Court FORTY NINE THOUSAND TWO HUNDRED SIXTY and no/100 ($49,260.00) Dollars, which represents the funds held by Bucksport and owed to Weaver Engineering or Robert Weaver as of October 11, 2013;

2. Pursuant to Federal Rules of Civil Procedure 22 and 67 and Local Civil Rule 67.01(B) DSC, the Clerk shall deposit these funds into an interest-bearing account;

3. The sum so invested in the interest-bearing account shall remain on deposit until further order of this Court;

4. Pursuant to Local Rule 67.01(c), the Clerk shall deduct a fee for the handling of the funds, as authorized by the Judicial Conference of the United States and as set by the Director of the Administrative Office without further order of the Court; and

5. As discussed in this Court's Preliminary Injunction Order, Defendants remain enjoined from (1) seizing, confiscating, or in any other manner forcibly taking funds held by Bucksport and owed to Weaver as of October 11, 2013, and deposited with the Court, or (2) taking any other action which might interfere with this Court's determination of Bucksport's interpleader action.

All remaining grounds raised in Bucksport's Motion to Deposit Funds are denied *without prejudice* to Bucksport's right to raise, at the appropriate time in this litigation, the issue of its discharge from liability regarding the deposited monies, its dismissal from this action, or its entitlement to attorneys' fees.

**IT IS SO ORDERED.**

                                                    s/ R. Bryan Harwell
                                                    R. Bryan Harwell
                                                    United States District Judge

Florence, South Carolina
October 31, 2013