IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Bucksport Water Systems, Inc., ) | Civil Action No.: 4:13-2503-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Weaver Engineering, Inc., Robert L. ) | **OPINION AND ORDER** |
| Weaver, the South Carolina Department ) | |
| of Revenue and the United States of ) | |
| America, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the Court on the Defendant United States of America's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This is an action for interpleader filed by the plaintiff, Bucksport Water System, Inc. (hereinafter "BWS"). At issue is the priority of certain liens belonging to the the Defenant United States of America and the Defendant South Carolina Department of Revenue ("SCDOR") as it relates to the collection of certain funds held by BWS that would otherwise be payable to Defendant Weaver Engineering (hereinafter "Weaver Engineering") for engineering services and other work it performed for BWS. On summary judgment, the United States contends that it has a valid and enforceable lien, with priority over comparable liens of the SCDOR, and that the Clerk of Court should disburse the interpleader funds to the United States.

1

## BACKGROUND

BWS engaged Weaver Engineering to "perform preliminary engineering studies and design work for a planned expansion of its rural water services in exchange for payment." (ECF No. 1 ¶ 11; ECF No. 48 ¶ 3.) Weaver Engineering began preliminary work on the project, on or about April 2010. (Vanaskie Decl. Ex. 5, Answer to SCDOR's Interrog. No. 2.) In August 2010, Weaver Engineering and BWS entered into an engineering contract, which was approved by the U.S. Department of Agriculture, Rural Development, in March 2011. *Id.* From June 2011 to the present, BWS has not paid Weaver Engineering any money owed under their contract. (Vanaskie Decl. Ex. 1, Resp. to First Set of Interrogs., Req. for Produc. of Docs., and Req. for Admis. Nos. 4, 5.)

Separately, Weaver Engineering has accumulated hundreds of thousands of dollars in unpaid employment and unemployment taxes, penalties and interest. (Alford Decl. ¶ 3.) Specifically, Weaver Engineering has unpaid employment tax liabilities for the last three quarters of 2007, all four quarters in 2008 through 2012, and the first quarter of 2013. *Id.* As of June 12, 2014, Weaver Engineering owes $844,581.36, plus interest accruing after that date, for its unpaid employment and unemployment tax liabilities. *Id.* The Internal Revenue Service ("IRS") assessed the above-referenced liabilities against Weaver Engineering. *Id.* ¶ 5.

Weaver Engineering has refused to pay the full amount of the assessments for the tax periods ending June 30, 2007 through December 31, 2008. *Id.* ¶ 7. With respect to these periods, Weaver Engineering owes a total of $384,860.45 including penalties and interest, as of June 12, 2014. *Id.* ¶ 9. As a result, federal tax liens have arisen and

attached to all of Weaver Engineering's property and rights to property, including the $61,440 at issue, as well as to any additional funds BWS owes, or may in the future owe, to Weaver Engineering. See U.S.C. §§ 6321 and 6322. The United States recorded notices of federal tax liens in the public records of Florence County, South Carolina, on the December 10, 2010, and June 10, 2011. (Alford Decl. ¶ 10.)

Robert L. Weaver is the principal of Weaver Engineering. (ECF No. 1 ¶ 18; ECF No. 48 ¶ 3.) Consequently, the IRS assessed trust fund recovery penalties under 26 U.S.C. § 6672 against Weaver as a responsible officer of Weaver Engineering who willfully failed to truthfully account for, collect, or pay over to the United States the federal income and employment taxes withheld from the wages of Weaver Engineering's employees for the tax periods ending March 31, 2008 through March 31, 2009. (Alford Decl. ¶ 12.) Weaver has failed to pay in full the balance of his trust fund recovery penalties. Id. As of June 12, 2014, Weaver owes $115,219.69, plus interest until paid, for the unpaid trust fund recovery penalties identified above. Id. ¶ 16. The IRS then recorded notices of federal tax lien against Weaver in the public records of Florence County, South Carolina, on March 23, 2012 for the tax periods ending March 31, 2008, and on January 25, 2013, for the tax periods ending June 30, 2008, through March 31, 2008. Id. ¶ 17.

In addition to federal tax liabilities, Weaver Engineering owes unpaid state tax liabilities. (Vanaskie Decl. Ex. 6 at 1-6.) The SCDOR recorded notices of its liens in the public records of Florence County, South Carolina. Id. In June 2011, the SCDOR served a levy attempting to collect Weaver Engineering's outstanding state tax liabilities. Id. at 6; see also ECF No. 1-2 at 1-2.

BWS has not honored either the United States' levies or SCDOR's levies and, on September 13, 2013, brought this interpleader action. (See generally ECF No. 1.)

## APPLICABLE LAW

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257. In determining whether a genuine

issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## DISCUSSION

The United States contends that the undisputed material facts, in this matter, demonstrate, as a matter of law, that its claim to the interpleader funds is entitled to priority over any claims asserted by the other defendants, including the SCDOR. The United States argues that the tax liens against the Weaver Defendants attached to the Weaver Defendants' property and rights to property, including any claim they assert to the interpleader funds. The United states claims that liens that arose before the SCDOR assessed state taxes against Weaver Engineering are entitled to priority under the federal common-law principle of first in time, first in right. The United States further contends that the federal tax liens, that arose *after* the state tax assessments, still have priority to the interpleader funds, over the liens of SCDOR, because the state did not possess a choate

lien against those funds until the federal tax liens attached. Accordingly, the United States claims that it is entitled to the full amount of the interpleader funds ($61,440).

In response, the SCDOR acknowledges that the IRS tax lien, assessed on June 30, 2008, has priority over the SCDOR liens (in the amount of $29,619.45), as first in time. The SCDOR, however, believes that its tax liens with assessment dates after June 30, 2008 and before October 11, 2010 (date of assessment for earliest outstanding United States lien), see 26 U.S.C. §§ 6321, 6322; (Alford Decl. ¶ 4), to the extent Weaver performed any services or work for Bucksport prior to October 11, 2010, have priority. These SCDOR liens represent assessed tax of $ 65,540.58.

The Court acknowledges that it must apply federal law to determine the priority of the competing tax liens, and thus the parties' interests in the interpleader funds. See *Aquilino v. United States*, 363 U.S. 509, 512-13 (1960). Although SCDOR's liens for state employment taxes arose before the next federal tax lien came into existence, the United States contends that it still has priority. The parties agree that whether a previously filed state lien maintains priority over a subsequent federal one depends "on the time it attached to the property in question and became choate." *United States v. New Britain*, 347 U.S. 81, 86 (1954). It is uncontested that a choate state-created lien has priority over a subsequent federal tax lien, but an inchoate lien does not. See *United States v. Pioneer Am. Ins. Co.*, 374 U.S. 84, 88 (1963). A state-created lien becomes choate "when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *New Britain*, 347 U.S. at 84.

In this case there is an issue as to when the subject property accrued to Weaver

6

such that the amount owing it from BWS became "identified" for purposes of making the state lien choate. The United States argues that the debt became the property right of Weaver only at the point it *invoiced* BWS for its work, on February 28, 2013 ($49,260.00) and March 14, 2014 ($12,180), respectively. The SCDOR contends that Weaver's interest in the debt accrued at the time of performance, sometime prior to prior to October 11, 2010. The SCDOR does not know the exact dates of completion of the work and has asked for time to perform additional discovery, as a result.

If the United States is right, that the state liens became choate in 2013 and 2014 after the filing of its lien, then the debt is considered "after acquired property," in which both parties' interest, in it, accrues simultaneously so to speak. But, the United States claims priority still, under a sort of tie-goes-to-the-runner jurisprudential doctrine. Specifically, in *United States v. McDermott*, 507 U.S. 447 (1993), the United States Supreme Court held that federal tax liens must be given priority vis-à-vis state-created liens in instances where both liens simultaneously attach to after-acquired property because the state lien is not choate as to the after-acquired property before the federal tax lien attaches to the after-acquired property. *McDermott*, 507 U.S. at 454-55. As a result, even if the federal tax liens arose subsequent to the state liens, the federal tax liens are entitled to priority. *See id.*; *see also Woods v. Simpson*, 46 F.3d 21, 23 (6th Cir. 1996) (relying on McDermott to hold that "[e]ven though Kentucky's lien was recorded before that of the United States, these liens attached simultaneously when David Simpson acquired his property interest in the estate of Mary Simpson at the time of her death. The United States lien, therefore, has priority.")

If, however, the SCDOR is correct, that its liens became choate at the time of performance and, therefore, sometime prior to October 11, 2010 (date of assessment for earliest outstanding United States lien), see 26 U.S.C. §§ 6321, 6322; (Alford Decl. ¶ 4), then the SCDOR liens have priority because they were choate prior to the recordation of the federal liens, on December 10, 2010, and June 10, 2011.

So, the dispositive issue is whether Weaver Engineering acquired the right to payment at the time it performed the work for BWS or, instead, at the time that Weaver Engineering invoiced it. The *Vanguard Airlines, Inc. v. Airline Automation, Inc.*, 295 B.R. 329 (2003) decision, relied upon by the SCDOR to contend that the debt accrued at performance, is not instructive. In that case, the invoice issued before performance and the court easily rejected the antecedent invoices as having implicated actual debt ahead of time. By Contrast, *Evangelista v. United States*, No. CV 90-4307 (ADS), 1992 WL 360346, at *5 (E.D.N.Y. Aug. 12, 1992), provides a more direct answer to the question. The Eastern District of New York expressly held, "An account receivable does not come into existence until the party who performed the service issues the associated invoice." *Id.*

In addition to this direct pronouncement, the payee in this case, the plaintiff BWS has subjectively averred as much. The plaintiff has sworn that Weaver Engineering only became entitled to receive money for the work it performed under its contract with the plaintiff after submitting an invoice. (Vanaskie Decl. Ex. 1, at 6 ¶ 5 (Ans. to Req. for Admis. No. 5); Vanaskie Decl. Exs. 3, 4 (Feb. 28, 2013 and March 14, 2014 Invoices).)

Based on *Evangelista* and the unrefuted admission of the actual payor in this case, there is no issue of fact as to whether or not Weaver Engineering was entitled to receive the funds at issue only after it submitted the February 28, 2013, and March 14, 2014,

invoices; it was. (Vanaskie Decl. Ex. 1, at 7 ¶ 7 (Ans. to Req. for Admis. No. 7); Vanaskie Decl. Ex. 2, at 2 ¶ 8 (Suppl. Ans. to Req. for Admis. No. 8.)  Accordingly, the right in monies owed is after-acquired property, in which the SCDOR did not become choate until after the existence of the United States' liens.  Accordingly, the United States liens have priority.

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion for summary judgment.  (ECF No. 64).  The Clerk of Court is directed to disperse, to the Defendant United States of America, the entire amount of the interpleader funds ($61,440.00)

    IT IS SO ORDERED.

                                              Bruce Howe Hendricks
                                              United States District Judge

Greenville, South Carolina
March 23, 2015